C. M. Slaughter, *et al.* v. R. C. Parsons, as Receiver
of City National Bank in Miami.

4 So. (2nd) 328
Division A
Opinion Filed October 7, 1941
Rehearing Denied October 24, 1941

*Thos. B. Adams,* for Appellants;

*Carl T. Hoffman, L. L. Robinson, Arnold A. Ross*
and *J. Lewis Hall,* for Appellee.

Buford, J.—On April 1, 1929, the City National
Bank in Miami hereinafter called the vendor, agreed
to sell to C. M. Slaughter and K. E. McCall, defendants
herein and hereinafter called vendees, a certain piece
of realty located in Seminole County and consisting
for the most part of a fernery. The agreement was
expressed in a written contract, and pending con-
summation of the deal, vendees were authorized to

take possession of the property as vendor's agents. The vendees, on April 15, 1929, executed a note for $15,000.00 dated April 1, 1929, and bearing interest at 8%. This, plus a cash down-payment of $4,196.56, represented the entire purchase price (viz., $19,196.56). The note was payable in 11 instalments of $600.00 each and one (the 12th) of $8,400.00, on the first day of each month, respectively. Thus, the 12th and last instalment, for $8,400.00, was payable on April 1, 1930. At the same time there were given twelve (12) notes, eleven of them for $600.00 each and the twelfth for $8,400.00, and pledged one hundred (100) shares of capital stock in J. Schnarr & Co., a Florida corporation, $10.00 par value. A special warranty deed was delivered on September 3, 1929, and at that time, as further collateral for the remaining seven (7) instalments (5 having been paid), a purchase money mortgage was given on the aforesaid property and recorded October 14, 1929. The deed was recorded January 30, 1930, and contained a stipulation that vendees pay the 1929 taxes.

As will be noted later in this opinion plaintiff and his predecessors attempted at times to treat the $15,000.00 note as security and the twelve (12) notes as the principal debt. However, there was but one debt in the sum of $15,000.00 with one note and another set of twelve notes evidencing the debt and one mortgage securing the debt.

The property had previously been incumbered with a mortgage to vendor securing a note given by the Peerless Fern Company and endorsed by the Royal Fern Corporation. This mortgage had been foreclosed and a master's sale had, at which vendor was the

purchaser, but, by mistake, the mortgage was foreclosed partly on property belonging to Royal Fern Corporation. After foreclosure and sale there was still $4,716.02 owing on the note of the Peerless Fern Co. Before delivery of the deed to vendees, viz., on June 4, 1929, it was discovered that the town of Altamonte Springs was asserting a claim against the property for 1926, 1927 and 1928 taxes. Neither the vendor nor the vendees had contemplated such a claim and both thought the property lay outside the limits of said town. After much correspondence, it was decided that the deed only covered state and county taxes and vendor proposed to assign vendees any claim it might have on the Peerless Fern Co. note in exchange for vendees' erasure or payment of the tax claim. This proposal was rejected, the matter "left open" and, the parties reaching no agreement, vendees attacked the tax claims and had them voided. Vendees assert this cost them, in round figures, $2,000.00 and plead this amount be deducted from the enforceable claim (if any) of plaintiff. Vendees discovered that Royal Fern. Corp. claimed an interest in the property covered by their deed (and mortgage) by virtue of the Peerless Fern Co. mortgage having been partially foreclosed on its land. This dispute in title was settled by an exchange of quitclaim deeds between vendees and Royal Fern Corp., and by vendees granting to the latter, on September 7, 1929, an easement over the land covered by their mortgage. Said transactions were recorded January 20, 1930, the same date the deed was put on record.

For a time vendees paid off the instalments at maturity, but business conditions later became so bad (the spectre of the 1929 depression was stalking the

land) that full payment at maturity was impossible. Small payments were made from time to time until the principal balance due, on July 29, 1933, reached $3,700.00. On December 20, 1930, the vendor (bank) was closed and H. J. Spurway was appointed receiver. On the decease of Mr. Spurway, in 1934, C. H. Bancroft was appointed receiver, and on his death, June 17, 1940, the present plaintiff R. C. Parsons, took office as receiver.

On January 18, 1935, defendant J. Schnarr & Co. made advances to defendant Associated Florists Fernery, Inc., to aid it in keeping up the property and producing crops and as security took a crop lien for $5,000.00. The total amount due for these loans is $6,392.12.

On February 13, 1935, C. H. Bancroft sold the 100 shares of pledged stock to himself for $1,000.00. Vendees have produced evidence indicating the stock was worth $5,000.00 (50c on the dollar) at the time of the sale.

On December 21, 1936, C. H. Bancroft sold the $15,000.00 note (which at that time had owing on it $3,700.00) for $200.00 to a representative of J. Schnarr & Co. or to one Dudley acting for vendees, mortgagors. These sales, plus the payments voluntarily made, reduced vendees' principal debt to $3,500.00 on March 18, 1937. (Bancroft took the position at this time that he was selling security and that the twelfth note, which he still held, originally for $8,400.00 represented the principal debt.)

On February 19, 1936, W. H. Schulz, Jr., a defendant, in exchange for a crop lien, made improvements on the property consisting of certain posts, laths and other buildings used to cover and protect the fernery

from frost and sunlight. The balance due on these liens now totals $883.33.

Further payments were not forthcoming on what plaintiff and his predecessors have sometimes designated as, and now insist represents, the "principal debt." C. H. Bancroft, then receiver, as plaintiff, filed suit to foreclose the mortgage on January 27, 1937. On his decease R. C. Parsons was substituted as plaintiff. Vendees were unable to keep up the taxes and on January 29, 1937, plaintiff, apparently on the assumption he still held the note representing the principal debt, paid various taxes from 1930 to 1936 in the amount of $2,258.56, and also paid $50.00 for an abstract of the property. Inasmuch as the mortgage covered both such expenditures, these amounts were included in plaintiff's claim in an amended bill of complaint.

The lower court decreed that plaintiff's mortgage was superior and prior to any liens resting on the property and ordered said property sold to satisfy plaintiff's claim. Excepted, however, from the terms of the decree was certain personalty placed on the property by defendant W. H. Schulz, Jr. As aforementioned, this consisted of materials used to cover and repair the fernery and these the lower court decreed said defendant Schulz could remove. Excepted also from the sale was the interest of defendant Royal Fern Corp., consisting of an easement across the property (for a pipe line) granted by defendant vendees (Sept. 7, 1929) while they held title.

The lower court found the following to be the amounts owing to plaintiff: $3500 plus 8% interest thereon from March 18, 1937, to date; 8 % interest on $4700 from July 29, 1933, to February 13, 1935; 8%

interest on $3700 from February 13, 1935, to March 18, 1937; $2,258.56 plus 8% interest thereon from January 30, 1937, to date; $50.00 plus 8% interest thereon from January 30, 1937, to date.

The lower court decreed the above mentioned amounts plus costs be paid plaintiff and that, if necessary, the property be sold to pay said amounts. It was provided that the court would retain jurisdiction of the cause to provide, if necessary and equitable, for a deficiency decree.

Defendants' petition for rehearing having been denied, they have appealed to this Court.

The controlling question presented to the lower court was whether or not the sale of the $15,000.00 note upon which there was a balance due of $8400.00 to J. Schnarr & Co. was a bona fide purchase thereof by J. Schnarr & Co. or was purchased by J. Schnarr & Co. or by one Dudley for the use and benefit of the makers of the note and mortgage. If the acquisition of the $15,000.00 note was by a bona fide purchase for J. Schnarr & Co., then the result of the purchase would pass to that purchaser legal rights which would not obtain if the purchase was made for and consummated in behalf of the makers of the note and mortgage. The lower court in its decree, upon substantial evidence, held and adjudged: "That on or about December 21, 1936, Plaintiff's predecessor in office, C. H. Bancroft as receiver, as aforesaid, sold for the sum of $200.00 a certain promissory note, dated April 1, 1929, executed by the defendants C. M. Slaughter and K. E. McCall to City National Bank in Miami, in the principal amount of $15,000.00 to one B. F. Dudley as agent for the mortgagors;". It, therefore, becomes unnecessary for us to discuss the legal prin-

ciples which would govern the case if the title to the $15,000.00 note had passed to J. Schnarr & Co., as a bona fide purchaser.

It is sufficient to say that when the chancellor upon substantial evidence determined that the note was sold by the Receiver to B. F. Dudley who purchased it as agent for the mortgagors, the amount paid for the note was in effect a payment *pro tanto* on the debt and did not affect the security of the mortgage which was not assigned with the transfer of the note.

On the record the chancellor's findings, supra, must be sustained.

It is contended by appellant that the court committed error in allowing a credit of only $1,000.00 as proceeds from the sale of J. Schnarr & Company's stock by the Receiver Bancroft to himself. There is some evidence in the record that the stock was of a value in excess of $1000.00 There is also evidence that it was not of greater value than $1,000.00. We cannot say that the chancellor abused his judicial discretion in holding in effect that the sum of $1000.00 was fair value of the stock at the time it was transferred by the receiver to himself.

The only other question which we need to discuss is presented by the provision in the decree allowing 8% per annum from the date of decree until paid on the amount adjudged to be due under the decree. This was error. The decree comes within the purview of c. 16051, Acts of 1933, Sec. 4493, C.G.L. Supp., by which interest on judgments and decrees is limited to 6% per annum.

The decree should be reformed in this regard and, when so reformed, will stand affirmed.

So ordered.

Brown, C. J., Whitfield, and Adams, J. J., concur.